IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LORETTA HERNANDEZ, §
    PLAINTIFF, §
 §
VS. § CIVIL ACTION NO. 4:12-CV-097-A
 §
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL SECURITY, §
    DEFENDANT. §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Loretta Hernandez ("Hernandez") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Hernandez applied for DIB and SSI on October 23, 2009, alleging that her disability began on September 30, 2008. (Tr. 129–33.)

After her applications for benefits were denied initially and on reconsideration, Hernandez requested a hearing before an administrative law judge ("ALJ"). (Tr. 73–76, 94.) The ALJ held a hearing on June 15, 2011, and issued an unfavorable decision on August 18,

2011. (Tr. 9–22.) On December 23, 2011, the Appeals Council denied Hernandez's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1–4.) Hernandez subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (2012) (disability); 20 C.F.R. Pt. 416 (2012) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of

2

Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a

3

responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Hernandez presents the following issues:

1. Whether the ALJ committed reversible error by failing to find Hernandez's mental impairments to be severe; and

2. Whether the ALJ failed to evaluate Hernandez's mental impairment in accordance with the regulations.

(Pl.'s Br. 1.)

### IV. ALJ DECISION

In her August 18, 2011 decision, the ALJ concluded that Hernandez was not disabled within the meaning of the SSA. (Tr. 17–18.) In coming to her decision, the ALJ made findings pursuant to the five-step sequential evaluation process. At the first step, the ALJ found that Hernandez had not engaged in any substantial gainful activity since September 30, 2008—the date that Hernandez alleged she became unable to work. (Tr. 16.) At the second step, the ALJ found that Hernandez suffered from the following severe impairments: hyperthyroidism, congestive heart failure, and low back pain. (Tr. 17.) At the third step, the ALJ found that Hernandez's severe impairments did not meet or equal in severity to an impairment contained in the Listing. (Tr. 17.)

4

The ALJ then found that Hernandez had the RFC to perform sedentary work, subject to the following restrictions:

> No more than occasional reaching overhead; no climbing of ladders, ropes or scaffolding; no kneeling, crouching or crawling; the need to avoid even moderate exposure to fumes, odors, dust, gases or working in a poorly ventilated area; the need to avoid hazards such as dangerous moving machinery or working at unprotected heights; the need to avoid humidity or wetness; and the need for simple tasks in which she works with things rather than people.

(Tr. 17.) Next, at the fourth step, the ALJ found that Hernandez was unable to perform her past relevant work as a housecleaner, receptionist, or sales representative. (Tr. 17.) Finally, at the fifth step, the ALJ opined that, based on Hernandez's RFC and on her age, education, and work experience, Hernandez retained the ability to perform a significant number of jobs in the national economy and, thus, was not disabled and had not been disabled at any time through the date of the decision. (Tr. 17–18.)

## V. DISCUSSION

Hernandez complains in her first issue that the ALJ applied the incorrect legal standard by failing to cite the severity standard of *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), in evaluating her impairments and in determining that her mental impairments were not severe. To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at step two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d

5

at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added). The ALJ did not recite the *Stone* standard or cite to *Stone* in her discussion of the severity of Hernandez's impairments. The Fifth Circuit stated in *Stone* that it would assume that the ALJ had applied an incorrect standard to the severity requirement unless the correct standard was either set forth by reference to *Stone* or expressly stated in the decision. 752 F.2d at 1106. The Fifth Circuit stated that, "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id.*

On the other hand, procedural perfection is not required unless it affects the substantial rights of a party. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The Fifth Circuit recently published an opinion clarifying that even if the ALJ errs in failing to follow the procedures set out in *Stone*, such error does not require remand unless the claimant is harmed by the error. *Taylor v. Astrue*, No. 11-11085, 2012 WL 6965181, at *2 (5th Cir. June 28, 2012) (per curiam).[1] Under *Taylor*, therefore, a *Stone* error no longer requires automatic remand but instead is subject to a harmless-error analysis.[2] *See id.*

---

[1] The Fifth Circuit apparently published the *Taylor* opinion on December 19, 2012, in response to a motion to publish filed by the Commissioner. *See* note 2, *infra*.

[2] In the past, the undersigned has concluded that because *Stone* mandates that a claim must be remanded to the Commissioner for reconsideration if there is no indication that the ALJ applied the correct severity standard, a *Stone* error is a legal error that is not subject to harmless-error analysis. *See, e.g., Anderson v. Astrue*, No. 4:11-CV-317-Y, 2012 WL 4478964, at *8 n.5 (N.D. Tex. Aug. 7, 2012). Before *Taylor*, this was also the position taken by most of the judges in the Northern District of Texas. *See id.* (citing cases). The undersigned has reviewed the Commissioner's motion to publish the Fifth Circuit's opinion in *Taylor*, in which the Commissioner contended that the Fifth Circuit had previously issued conflicting guidance on whether a *Stone* error is subject to a harmless-error analysis. *Compare, e.g., Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (holding that *Stone* error required remand) *with LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501, at *2 (5th Cir. 1996) (unpublished table decision) (stating that remanding a case for *Stone* error would be a waste of judicial resources when the evidence established that the outcome would remain the same). The Commissioner also posited that this conflicting guidance has led to differing

Hernandez argues that substantial evidence does not support the ALJ's finding that her mental impairment was not severe. She contends that records from two consultative physicians and two nonexamining physicians indicate that she has diagnosed mental impairments that limit her abilities. The record contains no indication that a treating physician has ever diagnosed or treated Hernandez for a mental impairment. Hernandez was, however, examined by two separate consultative examiners in 2008 and 2010. First, Hernandez underwent a consultative clinical interview with mental status examination on December 31, 2008, with psychologist Randall Rattan, Ph.D. ("Dr. Rattan"). (Tr. 254–59.) Dr. Rattan diagnosed Hernandez with anxiety disorder, not otherwise specified, and assigned her a GAF score of 55.[3] (Tr. 257.) However, Dr. Rattan also stated that there was no evidence of formal thought disorder or perceptual abnormalities. As to thought content, Dr. Rattan stated, "No bizarre contentment was reported. Thinking also emphasized loss of abilities." (Tr. 256.) Dr. Rattan evaluated Hernandez's mood as only "mildly anxious," and her range of emotional expression was normal. (Tr. 256.) The only issue noted by Dr. Rattan as to Hernandez's sensorium and cognition was that she had mild problems repeating a moderately difficult item. Otherwise, Hernandez was alert and oriented, with no deficits in "fund of information," remote memory, working memory, abstraction ability, attention and concentration, or language ability. (Tr. 256.) Hernandez displayed no deficits in judgment or insight. (Tr. 257.)

---

results. *Compare, e.g., Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) (holding that misapplication of *Stone* standard is a legal error requiring remand) *with Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015–18 (N.D. Tex. 2012) (holding that *Stone* error is harmless if ALJ proceeds past step two of the sequential evaluation process). The Commissioner filed his motion to publish on September 26, 2012, urging the Fifth Circuit to designate its *Taylor* opinion for publication because such opinion provides conclusive guidance on whether a *Stone* error is subject to a harmless-error analysis. On December 19, 2012, the Fifth Circuit granted the Commissioner's motion to publish. Accordingly, based on the guidance set forth in *Taylor*, the undersigned will now engage in a harmless-error analysis when analyzing a failure by the ALJ to cite to the proper legal standard of severity at step two.

[3] Dr. Rattan wrote that a "ruling in" of Anxiety Disorder Due to Hyperthyroidism would appear appropriate once he received medical records confirming a diagnosis of hyperthyroidism. (Tr. 257.)

Hernandez underwent another consultative clinical interview with mental status examination on June 2, 2010, with psychologist Jason Simpson, Psy.D. ("Dr. Simpson"). (Tr. 381–86.) Dr. Simpson diagnosed her with (1) adjustment disorder, with anxiety and depressed mood, chronic, (2) rule out anxiety disorder due to thyroid disorder, and (3) polysubstance dependence, sustained full remission. (Tr. 385.) Dr. Simpson assigned Hernandez a GAF score of 58. (Tr. 385.) Dr. Simpson recorded that Hernandez was not taking medications for any mental condition or participating in psychotherapy. (Tr. 381.) Dr. Simpson observed that Hernandez was appropriately dressed and groomed, with normal mood, affect, motor, speech, and attention/concentration. (Tr. 383.) She was alert and oriented, with normal use of language, although the conversational flow was mildly guarded. (Tr. 383.) Hernandez had fair to poor abstract reasoning ability, fair concrete thinking, and fair judgment. (Tr. 384.) She exhibited no perceptual abnormalities and had intact memory. (Tr. 384.)

On January 25, 2010, nonexamining State agency psychological consultant Robert Gilliland, M.D. ("Dr. Gilliland") completed a psychiatric review technique form in which he determined that Hernandez had anxiety disorder, not otherwise specified. (Tr. 330.) Dr. Gilliland opined that Hernandez had (1) mild restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (Tr. 335.) Dr. Gilliland also completed a mental RFC assessment and opined that Hernandez was markedly limited in the ability to understand, remember, and carry out detailed instructions. (Tr. 347) Dr. Gilliland also opined that Hernandez was moderately limited in (1) the ability to maintain attention and concentration for extended periods; (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; (3) the ability to accept instructions and respond appropriately to criticism from supervisors; (4) the ability to respond appropriately to changes in the work setting; and (5) the ability to travel in unfamiliar places or use public transportation. (Tr. 347–48.) Still, Dr. Gilliland ultimately opined that Hernandez was able to "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, & respond appropriately to changes in work environment." (Tr. 349.)

On July 7, 2010, nonexamining State agency psychological consultant Susan Thompson, M.D. ("Dr. Thompson") completed a psychiatric review technique form in which she determined that Hernandez had a depressive syndrome and anxiety evidenced by adjustment disorder. (Tr. 391, 93.) Dr. Thompson opined that Hernandez had (1) mild restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (Tr. 398.) Dr. Thompson also completed a mental RFC assessment, and the only limitations she found were that Hernandez was moderately limited in (1) the ability to understand, remember, and carry out detailed instructions and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 402–03.) Dr. Thompson also opined that Hernandez could "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting." (Tr. 404.)

At the hearing, Hernandez testified that she experienced anxiety attacks "maybe twice a week" but that her doctors had not yet prescribed her any medication to help her deal with the

9

anxiety. (Tr. 55–56.) Hernandez testified that she would have difficulties interacting with people and "staying focused on what they're saying" because she felt scared and anxious. (Tr. 60.) She stated that she would be able to interact and work with supervisors, co-workers, and the general public, but that being around crowds of people would be "a problem." (Tr. 53.)

In the hearing decision's analysis of Hernandez's RFC, the ALJ evaluated the evidence pertaining to Hernandez's claimed mental impairment as follows:

> The medical record lacks any significant evidence concerning the claimant's mental status. Save for the two consultative psychological evaluations, there is no evidence that the claimant has sought any treatment for emotional issues, or that any treating doctor noted any emotional issues. My residual functional capacity [finding] takes into account the claimant's statements concerning her difficulty in getting along with other people (working with things rather than people), as well as the need to have simple job duties.

(Tr. 15.) In other words, even though the ALJ found little medical evidence supporting Hernandez's claims of anxiety, the ALJ took Hernandez's subjective complaints into account and included limitations in the RFC assessment that addressed Hernandez's claimed anxiety-related limitations in interacting with people and her need for low-stress conditions, as well as the opinions in the record that Hernandez was unable to handle complex instructions.

Based on the foregoing, the Court concludes that the ALJ's failure to cite to *Stone* or the *Stone* severity standard did not affect Hernandez's substantial rights, so Hernandez was not harmed by the error. *See Taylor*, 2012 WL 6965181, at *2; *Mays*, 837 F.2d at 1364. Here, substantial evidence supports the finding of the nonseverity of Hernandez's mental problems. When Hernandez originally filed for benefits on October 23, 2009, she did not include any allegation that she suffered from a mental impairment and did not give any indication that she was being treated for a mental impairment. (Tr. 153.) She had not been diagnosed with a mental impairment by any treating doctor, and she had not received any treatment—medication, therapy,

or otherwise—for her mental health complaints. The ALJ recognized that the only medical evidence in the record by an examining source were the two consultative exams performed by Dr. Rattan and Dr. Simpson. While both consultative examiners diagnosed a mental impairment (anxiety disorder/adjustment disorder with anxiety and depression), neither doctor's exam reports contain findings of any severe symptoms or effects relating to Hernandez's mental condition.

As for the opinions by the nonexamining State agency psychological consultants, the ALJ was required to consider this evidence but was not bound by it. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Dr. Gilliland opined that Hernandez could handle simple instructions and make simple decisions, and Dr. Thompson opined that Hernandez was able to handle detailed, but not complex, instructions. (Tr. 404.) The ALJ's RFC assessment, which restricted Hernandez to "simple tasks in which she works with things rather than people," is consistent with both of these opinions. (Tr. 17.)

Based on the evidence in the record, the Court concludes that substantial evidence supports both the ALJ's determination that Hernandez did not suffer from a severe mental impairment and the ALJ's assessment of Hernandez's RFC. Hernandez was required to show that she was so functionally impaired by her mental impairment that she was precluded from engaging in substantial gainful activity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). She fails to do so, and any error by the ALJ in not following the procedures set out in *Stone* is harmless. *See Taylor*, 2012 WL 6965181, at *2.

Additionally, the district judge to which this case is assigned has held that "in those cases where the administrative law judge found the existence of a severe condition at step two and went past step two to reach a decision at a later step that benefits should be denied," any error in

failing to use the *Stone* severity standard at step two of the analysis is harmless. *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1016 (N.D. Tex. 2012). Here, the ALJ found at step two that Hernandez's hyperthyroidism, congestive heart failure, and low back pain were severe impairments. The ALJ proceeded past step two and continued her analysis, ultimately determining at step five that Hernandez could perform jobs existing in significant numbers in the national economy and, thus, benefits should be denied. Accordingly, the ALJ's failure to cite to *Stone* at step two was, at most, harmless error under *Jones* as well. *See id.* Remand is not required on Hernandez's first issue.

In her second issue, Hernandez complains that the ALJ did not evaluate her mental impairments under the "technique," which is a set of mandatory steps that the regulations require an ALJ to follow when evaluating the severity of mental impairments in claimants. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The regulations require the ALJ's written decision to incorporate the pertinent findings and conclusions based on the technique. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). Violation of a regulation constitutes reversible error and requires remand only when a reviewing court concludes that the error is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *see also Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (stating that procedural improprieties constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision").

Citing *Arebalo v. Astrue*, No. 4:09-CV-496-A, 2010 WL 6571087, at *8 (N.D. Tex. Oct. 7, 2010), *adopted in* 2011 WL 1633137 (N.D. Tex. Apr. 29, 2011), Hernandez argues that the ALJ's failure to follow the technique and make the required findings requires remand because, without these findings, a reviewing court is unable to determine whether the ALJ weighed the evidence properly. (Pl.'s Br. 10, Reply 2.) In *Arebalo*, the undersigned recommended remand

because the record contained a great deal of evidence relating to the plaintiff's mental impairments that the ALJ "completely ignored," including psychological exam records, neuropsychological screening battery test results, medical records showing treatment and prescribed medication for the plaintiff's mental impairments, and the plaintiff's own testimony regarding his mental health treatment. *Id.* The undersigned therefore concluded in *Arebalo* that the ALJ had failed to make a reviewable analysis of the plaintiff's mental impairments because the record "clearly establishe[d]" that the plaintiff had a severe mental impairment. *Id.*

Here, in contrast, the ALJ's decision shows that she thoroughly reviewed all of the evidence in the record relating to Hernandez's mental impairment. The ALJ detailed her review of the records of both consultative examiners as well as the opinion of State agency nonexamining consultant Dr. Thompson. The ALJ did not specifically mention Dr. Gilliland's opinion, but as stated above, the ALJ's RFC determination is not inconsistent with Dr. Gilliland's opinion that Hernandez could handle only simple instructions and make simple decisions. Otherwise, the ALJ accurately noted the lack of any other significant evidence in the record concerning Hernandez's mental status.

Because the ALJ's decision adequately discusses the evidence in the record relating to Hernandez's mental impairments, it is clear to the Court that the ALJ properly considered and weighed the evidence when she evaluated the severity of Hernandez's mental impairments. Moreover, substantial evidence exists to support the ALJ's finding that Hernandez's mental impairments were not severe as well as the ALJ's RFC determination that Hernandez should be limited to "simple tasks in which she works with things rather than people." Thus, to the extent that the ALJ erred in failing to document her findings and conclusions based on the technique, this error is harmless and does not require remand. *See Frank*, 326 F.3d at 622; *Morris*, 864 F.2d

at 335; *Livingston v. Astrue*, No. 6:10-CV-014-BG, 2011 WL 4359942, at *8–9 (N.D. Tex. Aug. 16, 2011) (concluding that the ALJ's failure to perform the technique was harmless and did not require remand because substantial evidence supported the ALJ's decision), *adopted in* 2011 WL 4374970 (N.D. Tex. Sept. 19, 2011).

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until March __7__, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections

14

are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 21, 2013.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE